Document   Page 1 of 9

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  BKY 18-40752
Chapter 7

Mark E. Herman,

Debtor.

### DEBTOR MARK HERMAN'S OPPOSITION TO MOTION TO AMEND SETTLEMENT AGREEMENT

The distinct issue before this Court is whether the Trustee sold Debtor Mark Herman's copyright to Amber Senn and Numeric Trading Company (collectively "Senn"). The motion is limited to whether or not the Trustee and Senn have satisfied the requirements of 17 U.S.C. § 204(a) to transfer Mark Herman's copyright. By the Trustee's motion, she acknowledges knowledge of the existence of copyrights but the word "copyright" was never used in the original sale.

The instant motion is fraught with issues. Why is this motion expedited? Why represent to this Court that Senn paid $52,500 for the artwork when Senn only paid $12,500 for the artwork? Why ignore that, according to the Trustee's own motion (Dkt. 42), Senn paid $40,000 to settle a lawsuit filed against her by the same Trustee for fraud? In that same vein, why bring up the fact that a suit was filed against the Debtor for alleged false statements but ignored the fact that case was dismissed upon stipulation without any monetary settlement?

1

The irony is unavoidable. When counsel for both the Trustee and Senn were confronted with the fact the Senn was selling Debtor's prints with forged signatures of Herman and selling them at a premium, and sending those same forged prints through the United States' mail, counsel had no comment. Is this the way Senn is making a living? Moreover, Senn is "making a living" by selling Herman's post-petition artwork without authorization yet the Trustee now asks this Court for permission to do so.

With the assistance of the Trustee, Senn is seeking a windfall in claiming that she bought more than a stock of hundreds of prints for $12,500 but, rather, she also acquired the copyright.

## ARGUMENT

### A.    PROCEDURAL BACKGROUND.

On September 13, 2018, the Trustee initiated an action against Senn and Numeric Trading Company alleging fraud, constructive fraud, avoidance, and turnover. (Dkt. 39). In her Complaint, the Trustee acknowledged that "debtor is a well-known artist with his artwork sold in museums and stores throughout Minnesota and other states." (Id. at para. 10). The Trustee attached an exhibit to its complaint listing a catalogue listing of Herman's art listed by "Title," "Vendor [Herman]," "Type," and "Variant Inventory Qty." The variant inventory quantity lists the number of a particular print.

On May 14, 2019, the Trustee moved this Court for an order approving the sale of "all rights, title and interest in all artwork created by the debtor pre-petition (the 'Artwork')." (Dkt. 42, para. 6). The Trustee stated in its motion that "[t]he debtor scheduled 'rights to royalties from art work' for an unknown amount but did not schedule

2

the artwork itself as an asset." (Id. at para. 7). The Trustee further represented that "[t]he Artwork is property of the bankruptcy estate . . .." (Id. at para. 8). Finally, the Trustee represented that it was selling the Artwork "'as is' without any representations or warranties." (Id. at para. 14). That motion was granted on June 26, 2019. On November 1, 2019, this Court issued its Order of Discharge. (Dkt. 48). For more than a year, the Trustee has taken no action whatsoever with respect to the estate.

The Trustee now moves this Court to "clarify" the Trustee's previous motion to now, for the first time, include Herman's copyright in his "Artwork." To date, the only place that "Artwork" has been defined is the list of finite prints attached to the Trustee's Complaint against Senn.

B.　**COPYRIGHT WAS NOT TRANSFERRED.**

17 U.S.C. § 204(a) provides that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." (emphasis added). Works created on or after January 1, 1978, registration is not a condition to obtaining copyright. Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc., 896 F. Supp. 2d 223, 229 (S.D.N.Y. 2012). Instead, copyright automatically inheres in a work the moment it is "created" (Montgomery v. Noga, 168 F.3d 1282, 1288 (11th Cir. 1999)), which to say "when it is fixed in a copy or phonorecord for the first time." 17 U.S.C. § 101; Family Dollar, 896 F. Supp. 2d at 229. Section 106 of the Act gives the owner of a copyright "exclusive rights to do and to authorize" the

3

reproduction of the copyrighted works. 17 U.S.C. § 106(1). However, in the case at bar, the copyright was never transferred to Senn.

All the Trustee transferred was "all rights, title and interest" in Herman's pre-petition artwork. There is no word about transferring the copyright. In a concurring and dissenting opinion, Judge Cowen in TD Bank N.A. v. Hill, 928 F.3d 259, 289 (3rd Cir. 2019) wrote:

> I agree that no specific language is necessary to satisfy the requirements for an effective assignment under state and federal law. See, e.g., Radio Television Espanola, 183 F.3d at 927 ("No magic words must be included in a document to satisfy § 204(a)."); Deutsche Bank Nat'l Trust Co. v. Romano, 147 A.D.3d 1021, 1023, 48 N.Y.S.3d 237 (N.Y. App. Div. 2017) (observing that no special language or formalities are necessary to effect assignment). Nevertheless, the assignor must in some fashion have "'manifested an intention to make a present transfer of his rights to the assignee.'" Deutsche Bank, 147 A.D.3d at 1023 (quoting 9-47 Corbin on Contracts § 47.7); see, e.g., Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC, 477 F.3d 383, 391 (6th Cir. 2007) ("Nevertheless, '[s]o long as the parties' intent is clear, a transfer of copyright need not include any particular language.'" (quoting Gilleland v. Schanhals, 55 F. App'x 257, 260 (6th Cir. 2003)). According to the Ninth Circuit:
>
>> Section 204's writing requirement is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.
>
> Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990).
>
> Neither the letter nor the publishing agreement included "a one-line pro forma statement." Specifically, the documentation at issue here did not state that Hill is assigning, transferring, or granting his copyright interest in the manuscript to Commerce Bank—nor did it say that such an assignment, transfer, or grant had already occurred (or would take place in the future). See, e.g., Baisden, 693 F.3d at 500 ("That [royalty] check merely states that

4

it was for 'Men Cry in the Dark Fall 2005 Royalties (Paid in Full).' The check does not expressly refer to an assignment of copyrights. See [Playboy Enters., 53 F.3d at 564] (applying clearly erroneous standard and deferring to district court's determination that check for past 'assignment ... of all rights, title and interest' was insufficient to transfer copyrights)."). Certainly, the inclusion of this sort of language would have dispelled doubt and "convey an unmistakable intent" to effect a transfer (id. at ——). Although not strictly required as a matter of law (see id. at 274–75 n.8), the existence of a document executed by the putative assignor and assignee would also have been stronger evidence of an assignment than what we have here, i.e., a publishing agreement executed by Commerce Bank and Portfolio, and a letter signed by Hill addressed to Portfolio.

In SCO Group, Inc. v. Novell, Inc., 578 F.3d 1201 (10th Cir. 2009) the court held that "[w]e think that section 204's writing requirement is best understood as a means of ensuring that parties intend to transfer copyrights themselves, as opposed to other categories of rights." Id. at 1212. In TD Bank N.A. v. Hill, 928 F.3d 259 (3rd Cir. 2019) the court held that "[w]e recognize that courts do not lightly infer that a party has assigned his interest in a copyright, particularly given the Copyright Act's writing requirement, and in doubtful cases, a document should not be construed to divest an author completely of his ownership interest. Id. at 275 (citations omitted).

Here, the transfer of "Artwork" was given short-shrift. The "Artwork was only defined in the complaint against Senn and listed a finite list of prints – no mention of the copyright. When counsel for the Trustee was asked if any transfer documents were executed, none existed. Simply put, the copyright was never sold to Senn.

However that has not stopped Senn from "making a living" selling Herman's artwork including, selling Herman's prints with forged Herman signatures. Take for example Herman's "North Star Blanket" print. (Ex. A to motion, page 18). Until recently,

5

it was on display at the Minnesota Marine Art Museum in Winona, Minnesota bearing a forged Herman signature and being represented as print 116 of 250. Surprisingly, that same print was re-numbered as 118 and sold through the United States mail. Similarly Herman's "Grain Belt Sign" (Ex. A to motion, page 18) was forged (notably on the wrong side of the print's bottom) was sold through the United States mail.

In the end, Senn does not own Herman's copyright.

### C.　THE TRUSTEE'S MOTION INCLUDES POST-PETITION WORKS.

Attached as Exhibit A to the Trustee's motion are copies of Herman's artwork in which she is asking the Court to confirm that she has sold the copyright. This exhibit includes artwork that was created post-petition. For example, Herman produced artwork listed on the attached exhibit 1 post-petition yet the Trustee is asking to sell the copyright to those pieces of art. Moreover, the Exhibit A to the Trustee's motion references "[v]arious other artworks including Kill Kancer charity rock-concert style posters." This vague description does not satisfy § 204(a). Clearly, the Trustee has no right to the copyright of this artwork; but it further illustrates the overreaching nature of Senn's actions.[1]

---

[1] Trustee's motion seeks approval to sell "Clarified Artwork" which includes, but is not limited to, the works attached as Exhibit A. What exactly is being sold? Again, § 204(a) requires far more clarity and intent than is being proposed by the Trustee.

## CONCLUSION

Based upon, Debtor Mark Herman respectfully requests that the Trustee's motion be denied. Alternatively, Debtor requests an evidentiary hearing on this motion.

Dated: December 8, 2020.

SRCARLSON LAW, LLC

Scott R. Carlson (912284)
2700 W. 59th Street
Minneapolis, MN 55410
(612) 207-0120
scott@srcarlsonlaw.com

**ATTORNEY FOR MARK HERMAN**

## VERIFICATION

The undersigned, Mark Herman, under penalty of perjury, hereby states that he has read the foregoing Opposition to Motion to Amend Settlement Agreement and states that the information contained herein is true and correct to the best of his information and belief.

Mark E. Herman

December 8, 2020

7

# Mark Herman Art Catalog

### MINNEAPOLIS SKYLINE
page 14 of 29



### THE HUNTER
page 20 of 29



### JUMPEN COWBOYS
page 20 of 29



### DALI SPECS
page 20 of 29





# Mark Herman Art Catalog



### BDA MAKA SKA
page 11 of 29



### BOUNDARY WATERS PORTAGE
page 11 of 29



### BOREAL FOREST
page 11 of 29



### FOSHAY TOWER
page 12 of 29



### INDEPENDENCE DAY
page 12 of 29



### GRAND VIEW LODGE
page 13 of 29

